Jenner, J.
At the September term, 1885, of the court of common pleas of Crawford county, the grand jury in and for said county found and returned an indictment for murder in the first degree against Joseph Aidt and Thomas Hotelling, for killing one William Jones on the 12th day of September, 1885.
The indictment contains two counts. The first count, in substance, charges that Aidt “ purposely, feloniously and of deliberate and premeditated malice,” with an unknown weapon, assaulted said William Jones, giving him sundry mortal wounds, and when he became insensible and helpless, placed bim upon the track of the Pittsburgh, Ft. Wayne & Chicago Railroad, and. left him there, so that the locomotive and cars would pass over him, and that the locomotive and cars did run over and mutilate him. . And that by reason of tbe acts of Aidt, fully set forth in the indictment, death resulted to said Jones on the 12th day of September, 1885. The first count also charges that one Thomas Hotelling was present, aiding, abetting and assisting said Joseph Aidt in the commission of said crime.
The second count in the indictment is substantially a repetition of the allegation of the first count, except that it charges that Aidt and Hotelling cast, threw and pushed *19 Jones upo,n the track of the railroad, and that the locomotive and train of cars passed over him, causing his death.
The plaintiff in error, Joseph Aidt, was tried separately to a jury, and a verdict of murder in the second degree returned. The case is now before this court for review, a motion for a new trial having been duly filed, and all the evidence being embodied in a bill of exceptions.
Numerous errors are assigned in the record, some of which .are not urged by counsel for plaintiff in error, and several of which require but a brief mention.
The first objection we notice is on page 30 of the record, in the testimony of the woman Deuschler, to the question, “I will ask you what was the first thing said by either Aidt or Hotelling in regard to the whereabouts of Jones? ” The court permitted the question to be answered, and the witness answered that Jones had gone home and that “the d — n fool would be killed on the crossing. This testimony was competent. The declarations or admissions of Aidt were competent against him, and so were the declarations and admissions of Hotelling made in the presence and hearing of Aidt to which he assented.
And on page 82 an objection is made to the testimony of the witness as to the appearance, actions and conduct of Aidt while assisting to place the remains of Jones in the wagon— that he trembled and was frightened. The actions and appearance of Aidt were not opinions, but facts within the knowledge of the witness, and were competent evidence.
Nor do we think there was any error in the refusal of the-court to withdraw the evidence from the jury when the state rested its case. If there was any evidence to go to the jury, it was the province of the jury to weigh and pass upon it; but if the court was convinced that there was no evidence to justify a verdict of guilty, it would have been proper to direct the jury to return a verdict of not guilty.
John W. Donivan, a railroad conductor of some eleven years’ experience, was called on behalf of the state and examined as an expert, not as to the running, management or control of a locomotive or a train of cars, but his opinion taken as to the ■effect which would be produced by a locomotive or train strik *20 ing a person upon the track. Then on page 84 of the record a hypothetical question was put to the witness, embodying the facts proved as to the injuries received by .Jones, and where his body was found, and where it was lying, and then the opinion of the witness asked as to whether a train of cars could have passed over the body and left it in the condition it was in when found. The witness answered in substance that if a train had passed over the body it could not have been left in the condition and position in which it was found.
A locomotive engineer by the name of Berry was also called as an expert on behalf of the state, and among other questions put to him is one on page 88 of the bill of exceptions. The question was substantially the same as the one put to the conductor.
It is not necessary to refer to other witnesses of this class, called railroad experts. If this testimony was competent, then all of like character would be competent.
The rule, well recognized, is that witnesses must testify to facts within their knowledge; this rule is subject to some exceptions, one of which is that witnesses who have skill, learning or experience in a particular science, art or trade,may give an opinion in a proper case upon a given state of facts. This is limited to experts. 43 Ohio St., 282.
The management of locomotives and trains of cars requires an experience in that line of business, and engineers and conductors, undoubtedly, may be called as experts in any case where the question involved is as to what was or was not proper management of a locomotive and train. This is the doctrine of B. & I. R. R. Co. v. Bailey, 11 Ohio St., 233, cited by counsel for the state. Numerous cases to the same effect may be found in the elementary books and adjudicated cases. But are they experts for any other purpose ? Do their education and experience as engineers and conductors better fit them to speak as to the effect produced by a train of cars striking or passing over a human being than a commercial traveler or other person who may have seen such accident ? If a conductor or engineer had never seen a locomotive or train of cars strike a person, it would hardly be claimed that he would be competent as an expert to enlighten a jury on' the subject. If he *21 has seen a train strike one person, does that make him an expert? If not, then how many such accidents must he have witnessed? The person standing by the side of the track would have as good an opportunity to see the effect of the accident as would the conductor or engineer, and it would require no particular education, skill or experience to do so. The distance within which a train of cars can be stopped is the application of well recognized scientific principles to railroading, depending upon the weight and velocity of th,e train and the character and condition of the track. The experienced conductor orengineer can speak with substantial accuracy as to this, and his right to give an opinion should be limited to-questions arising as to the running, management and control of the locomotive and trains.
Counsel for the state have cited us to no authority sustaining the proposition urged by them, and we think reason is clearly against the doctrine. It follows that the admission of that class of evidence was error.
Another assignment of error is in admitting the testimony of Adolph Schiffer, as to conversations claimed to have been had-by him with Hotelling in the presence and hearing of Aidt.. Record, p. 128.
Aidt, Hotelling and Schiffer were confined in the county-jail. Schiffer testified that Hotelling, in a conversation addressed to the witness, said, among other things, that he, Ho-telling, would get out, but that Jo would not get out, because-he struck Jones. This testimony undoubtedly had great weight with the jury; and if the plaintiff in error heard the-conversation and understood what was said and assented to it-by his silence, it would be competent evidence against him. But to have this effect it must have been spoken in his presence and hearing. He must have heard and understood what was said to bind him by his silence. That is the doctrine of the case of Murphy v. The State, 16 Ohio St., 628, and we might add, this was recognized as the rule by the court below and so-charged to the jury.
If Aidt did not hear the conversation, no one would for a moment claim that he should be bound by what was said. If the witness had stated that Aidt did not hear the conversation, *22 the court would have excluded the evidence. Unless it was reasonably certain that the accused heard it, it should have been excluded — it should have appeared more probable that be heard it than that he did not hear it, from the statements ■of Schiffer, when examined on his voir dire. The possibility that Aidt may have heard what Hotelling said to Schiffer, did not, we think, authorize the conversation to be given to the jury. The two men, Aidt and Hotelling, occupied different, but adjacent, cells, separated by a wall or partition. Schiffer •was talking to Hotelling, at the door of his cell, in an ordinary ione of voice; Hotelling cautioned Schiffer not to talk so that Aidt could hear; thus situated (assuming that Hotelling said what Schiffer attributes to him), Hotelling stated to the wit-mess that he (Hotelling) could get out of jail, but“ Jo ” would not, because Jo did the striking; that he struck Jones. If true, •this was an exceedingly important fact. Did Aidt hear it ? He said nothing to justify the belief that he heard it. With a wall between him and Hotelling and the tone of voice being an ordinary one, mere silence would not justify the inference that he heard it. The witness says Aidt tried to drive him away from the cell door, and said: “ If you want to talk, talk louder, so that the -rest can hear it too.” Did that indicate that he heard what had been said? An examination of the record forces us to the conclusion that Aidt did not hear the •conversation, and that the court below should have excluded it from the jury.
We will not attempt to review the evidence. It is voluminous; some circumstances point strongly to the guilt of the accused. But with the testimony of Schiffer excluded, we are •of the opinion that the verdict of murder in the second degree was not sustained by sufficient evidence. Without calling attention to the several charges requested by counsel for the accused, to be given to the jury, we think there was no error in refusing to charge either of them. The charge as given to the, jury was carefully considered and covered all the questions ■arising in the case.
We find that there is error in the record as follows:
L In admitting the testimony of the conductor and engineer as experts.
*23 2. In admitting the testimony of Schiffer.
3. Because the verdict was not sustained by sufficient evidence.
For these reasons the judgment of the court of common pidas is reversed and the case remanded for further proceedings.